IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Criminal Action No. 1:07-cr-00140-1 |
| v. | Date: August 25, 2008 |
| JERRY HEADEN, Defendant. | |

TRANSCRIPT OF SENTENCING HEARING HELD BEFORE
THE HONORABLE DAVID A. FABER, JUDGE
UNITED STATES DISTRICT COURT
IN BLUEFIELD, WEST VIRGINIA

APPEARANCES:

For the Government: AUSA MILLER A. BUSHONG
U.S. Attorney's Office
U.S. Courthouse & IRS Complex
110 Heber St., Room 261
Beckley, WV 25801

For the Defendant: TIMOTHY P. LUPARDUS, ESQ.
Lupardus Law Office
Post Office Box 1680
Pineville, WV 24874-1680

Probation Officer: Teresa King

Court Reporter: Ayme Cochran, RPR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

PROCEEDINGS had before The Honorable David A. Faber, Judge, United States District Court, Southern District of West Virginia, in Bluefield, West Virginia, on August 25, 2008, at 1:34 p.m., as follows:

THE COURT: The case before the court is the United States against Jerry Headen, criminal number 1:07-140-1.

Will you note your appearances, please?

MR. BUSHONG: Miller Bushong for the United States, Your Honor, and with me is Steve Dempsey from the IRS.

MR. LUPARDUS: Timothy Lupardus, appearing on behalf of the defendant, Jerry Headen, who is seated to my immediate left, and is present in the courtroom.

THE COURT: Have you had the opportunity to review the presentence report with your client and are you prepared to go forward today, Mr. Lupardus?

MR. LUPARDUS: We are prepared to go forward, Your Honor.

THE COURT: The presentence report is accepted and ordered filed and made a part of the record and will be placed in the record under seal. In the event of an appeal, counsel on appeal will be permitted access to the sealed report except for the recommendations section. Except as may be modified by specific rulings made at this hearing, the court adopts as its findings the facts and conclusions contained in the presentence report.

In order to fulfill its reporting obligation under Rule 32 of the Federal Rules of Criminal Procedure, the court orders that a copy of its written memorandum of sentencing hearing and Report of Statement of Reasons be prepared at the conclusion of this hearing and be appended to and accompany any copy of the presentence report and made available to the Bureau of Prisons.

The court has withheld no information from the report under Rule 32.

The court has before it three objections that track the ones made in the case of the defendant's twin brother, Terry, and those are the objections by both the government and the defendant to the quantity of drugs attributable to the defendant; the objection to the probation officer's recommended cumulative four-point aggravating role adjustment enhancement; and the defendant and the government's objection to the four-point aggravating role enhancement.

Are those issues all viable for this hearing and do you have any others, gentlemen?

MR. BUSHONG: Your Honor, I think the parties have resolved those issues. Mr. Lupardus obviously can speak for himself, but I believe the parties are in agreement with the following:

With regard to the drugs, a Base Offense Level of 32; a two-point gun enhancement, just as in the prior hearing, which takes us to a level 34 when we consider the money laundering

guideline; the plus four for role; plus two for a 1956 conviction, arriving at a level 40; a three-point reduction for acceptance of responsibility, arriving at a level 37; and the defendant is a Criminal History Category II.

That would produce an advisory Guideline range of 235 to 293 before the court considers the United States' motion for substantial assistance.

THE COURT: Mr. Lupardus?

MR. LUPARDUS: Your Honor, that's correct. I have reviewed the matter. I've discussed it with my client. I've also had several communications with the U. S. Attorney about these issues and we are in agreement as to those calculations.

THE COURT: Okay. That is a Total Offense Level of 37; Criminal History Category of II, which provides a 235- to 293-month sentence range; supervised release with a statutory minimum of three years; a fine range of $20,000.00 to $1,500,000.00; and a special assessment of $200.00; and a possible order of community restitution not to exceed the amount of the fine imposed; is that correct?

MR. BUSHONG: I believe it is, Your Honor.

THE COURT: Is that right, Mr. Lupardus?

MR. LUPARDUS: Yes, Your Honor, I believe that's correct.

THE COURT: All right. Those are the -- the court adopts those then as the guideline calculations applicable to

this case.

Mr. Headen, pursuant to the sentencing guidelines at your original plea hearing on August 27th of 2007, I deferred final acceptance of your plea agreement and the adjudication of guilt pending receipt of the presentence report in your case.

Having now received that report and ruled on the issues raised thereby, I find that the charges to which you have pleaded guilty adequately reflect the seriousness of the offense behavior and I find that accepting your plea agreement will not undermine the statutory purposes of sentencing.

You were charged in a two-count information, pleaded guilty to that information, and I believe that the guidelines certainly allow for a sentence with regard to those two charges of, one, conspiracy to distribute oxycodone in violation of 21 U. S. C. 846; and, two, conspiracy to commit money laundering in violation of 18 U. S. C. Section 1956(a)(1)(B)(i) and (h), and that they do provide for a sentence which will satisfy the statutory objectives.

Therefore, I now accept your plea agreement and your pleas of guilty, find you guilty of those two charges, and you stand convicted before the court.

The court adopts its previous findings with regard to the guideline calculations applicable to this case and I think the next thing to do would be take up a motion for substantial assistance.

MR. LUPARDUS: Your Honor, may we approach before we do that?

THE COURT: Yes.

MR. LUPARDUS: Thank you.

(At side-bar.)

MR. LUPARDUS: Your Honor, we didn't know until we got here today who all was going to be in the gallery and there are people who are important and close to my client who, of course, are not charged and are out on the street and subject to retribution. There are people also here today who would happily share that information with people who might want to seek retribution against him and so, inasmuch as we're going to discuss his substantial assistance, I would ask that we either do it in camera or that we empty the courtroom for safety purposes.

THE COURT: Can you do it right here?

MR. BUSHONG: Yes.

THE COURT: I think I want to -- I'm extremely reluctant to do things in camera and to close the courtroom to the public because we have a long 200-plus-year tradition of having open courtrooms in this country for good reason. The public has a right to know, but in light of what you've just said, Mr. Lupardus, I think that's a good reason to proceed in camera and if -- and we'll just do it right here at the side-bar.

So do you want to proceed with your motion?

MR. BUSHONG: Yes, Your Honor. Can I have one second?

MR. LUPARDUS: Thank you.

THE COURT: And afraid of retribution against these people who are here, not against the court family; is that right?

MR. LUPARDUS: No, not against the court family, Your Honor. I'm afraid of retribution against people who are loved ones of my client.

THE COURT: I understand.

Okay. Go ahead, Mr. Bushong.

MR. BUSHONG: Your Honor, the United States filed a motion for substantial assistance and I'll just summarize each of the factors under 5K1.1. With respect to the defendant's assistance, the United States deems it to be substantial. It was very useful with respect to truthfulness.

The defendant's information was truthful and complete and reliable, as far as we know. We have no reason to believe otherwise. The nature and extent of the defendant's assistance, Your Honor, is as follows:

He immediately agreed to cooperate. As soon as the arrests were made and the searches were done, the defendant came in and said, "I want to do whatever I can to help." He immediately agreed to plead to two complex felonies, the drug conspiracy and the money laundering conspiracy, and he agreed to testify not only against co-conspirators, but also family members who were involved and his brother's girlfriend.

The defendant was debriefed a number of times. He testified

in front of a federal grand jury and his cooperation led in part -- not exclusively, but in part, to the prosecution of at least -- or of five people and those people are his brother's girlfriend, Brooke Brown; his mother; Denny Lester; Gilmore Richards; and McKiney Early. All of those people have either -- well, they were either charged by information or indictment and all of them have pled guilty and are pending their sentencing hearings.

This defendant testified in the grand jury as to each one of those cases. Unlike his brother, he has remained quiet and has done everything we've asked of him since he has pled guilty and we would ask the court to take that into consideration and grant the motion.

Your Honor, with respect to injury and danger of risk, this is a drug case. The risk is inherent and, again, the defendant's timeliness was immediate.

THE COURT: Do you want to add anything?

MR. LUPARDUS: The only things I would add to that is that there is legitimate concern for people who are close to him, loved ones of his that he has to be concerned about and, of course, he is not there to be able to take care of them. He considered that as a factor and it became more of a factor, I think, as the case continued and, secondly, he provided a considerable amount of information against -- Mr. Cook, is that his name?

MR. BUSHONG: Craig Cook, yes.

MR. LUPARDUS: Craig Cook, who I personally think -- because I know the lawyer who was representing Mr. Cook and I understand some of the things that were going on there and I think the fact that Jerry was in and cooperating, it led to Mr. Cook's plea.

Unfortunately, Mr. Cook wasn't very truthful after that, but I think that was also some help that Jerry was able to give them maybe Miller didn't touch on.

MR. BUSHONG: Well, I think I mentioned him as well, but, if not --

MR. LUPARDUS: And I don't know if you did or didn't.

MR. BUSHONG: And I agree he definitely assisted in the Craig Cook prosecution.

MR. LUPARDUS: There are a number of other individuals also who operated somewhat dependently and then somewhat independently at the Iraq house in Havaco and Jerry provided considerable information about all of those people, some of whom I don't think have been charged yet.

MR. BUSHONG: That's true.

MR. LUPARDUS: And there are also people who are still in that community who Jerry has information concerning and was debriefed already about and he gave that information freely, too, even though that was his community, people he had had long associations with.

MR. BUSHONG: I agree, Your Honor.

THE COURT: Okay. I'm going to grant the motion for substantial assistance and adopt the statements of counsel, both counsel for the government and the counsel for the defendant, as the basis for that motion, and I find the facts as stated in those statements of counsel and I find that all of the points that have to be met in order to justify a motion for substantial assistance have been met and I'll amplify this in the sentencing order to make it clearer, but rather than belabor this, I think that's sufficient for the record at this point and let me get my guidelines manual and I'll determine how far to depart.

He's at offense level 37, Criminal History Category II, at this point, and the court's going to depart downward three levels to level 34, which is a Criminal History Category of II, which gives us a 168- to 210-month window.

I've considered all the intermediate levels between 37 and 34 and find that those levels, 35 and 36, do not give me enough room to make an appropriate adjustment. I've considered every level from offense level 1, up to and including level 33, and I find that the levels below level 34 -- well, levels 1 through 32, in my view, do not give me enough latitude and level 33 overlaps with 34. So I can accomplish what I want by departing downward three levels to 34, which I believe is the appropriate level here to give me an appropriate adjustment.

I still believe a significant sentence is called for because

of the extent of the drug dealing here and the history of violence at the Iraq house with which the Headen's were connected and -- but I feel like I can impose a sentence that will be a substantial reduction from his pre adjustment Guideline range by departing downward to level 34. So the court is going to grant the motion and depart downward to level 34 three levels.

MR. BUSHONG: Thank you, Your Honor.

(Side-bar concludes.)

THE COURT: Okay, so we have a Total Offense Level of 34, a Criminal History Category II, which gives a sentencing range of 168 to 210 and a fine range of $17,500.00 to $1,500,00.00.

Mr. Lupardus, I'll hear any argument you care to make on where within that range the defendant should be sentenced.

MR. LUPARDUS: I have none, Your Honor, but my client would like to make a statement.

THE COURT: Mr. Headen, I'll be happy to hear you, if there's anything you want to say to the court.

THE DEFENDANT: Yeah, Your Honor, I'm sorry for being here today. I ain't making no excuse for what I done and I want to apologize to my family.

THE COURT: All right.

Mr. Bushong?

MR. BUSHONG: The United States asks for a guideline sentence, Your Honor.

THE COURT: Okay. Mr. Headen, if you will stand up there with your counsel, the court is prepared to sentence you.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Jerry Headen, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 180 months, consisting of 180 months on each count of conviction, to run concurrently.

Upon release from imprisonment, the defendant shall be placed on supervised release for a total term of three years, consisting of three years on each count, to run concurrently.

Within 72 hours of release from custody from the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, the defendant shall not commit any other federal, state or local crime and shall comply with all the standards of release adopted by this court by its current standing order.

The defendant is further ordered to pay a special assessment in the total amount of $200.00, consisting of $100.00 on each count. The $200.00 amount shall be due immediately. If the defendant lacks the means to pay it immediately, it may be paid in installments of not less than $25.00 a quarter through participation in the Bureau of Prisons Inmate Financial Responsibility Program during his term of incarceration with any remaining balance to be paid during the term of supervised

release.

The court finds the defendant does not have the financial means to pay a guideline range fine and departs downward from the guidelines and imposes no fine.

Is there any objection to the form of the sentence?

MR. BUSHONG: No, Your Honor.

MR. LUPARDUS: No, Your Honor.

THE COURT: You can be seated while I give the reasons.

Mr. Headen, I imposed a significant amount of time here because I think your misconduct deserves it, but you came in here looking at a 40-year sentence and the court feels that in view even of the fact that you got a very lengthy sentence, you got a very significant break from the court as well and I believe, however, that the 180-month sentence is called for in view of the extensive nature of the drug dealing here and the things that went on at the Iraq house, some of which are absolutely shocking, including at least one death. I'm not saying you were directly implicated in that, but you provided the venue for that to take place by doing your drug deals out of the Iraq house.

In view of all of that, I feel that the sentence imposed is sufficient, but not greater than necessary, to adequately punish you for your serious offense conduct, to instill within you and the public a proper respect for the law, to provide for a proper period of incapacitation and a suitable opportunity for rehabilitation.

I considered all the factors under 18 U.S.C. 3553(a), as well as the directives of the Booker and Pauley and other appropriate authority in determining the amount of incarceration to impose and I believe that the sentence is sufficient, but not greater than necessary, to achieve the objectives set forth in all of those authorities.

The three-year term of supervised release is imposed to allow a sufficient period for probation to monitor the defendant's efforts to obtain a law-abiding lifestyle following completion of your period of incarceration.

In reaching the decision to impose no fine, the court makes the following findings under 18 U. S. C. 3572(a):

The defendant's income, earning capacity and financial resources are as stated in the presentence report.

A fine in any amount would constitute an undue burden upon the defendant in view of his financial situation.

There is no identifiable pecuniary loss inflicted upon others as a result of the offense of conviction.

The evidence shows no illegally obtained gains from the offense of conviction still in the defendant's possession.

Mr. Headen, you have ten days to appeal. If you wish to appeal, you must file within ten days a Notice of Appeal with the Clerk of this court. If you wish to appeal and cannot afford to hire counsel to represent you on appeal, counsel will be appointed for you and, if you so request, the Clerk of Court will

prepare and file forthwith a Notice of Appeal on your behalf.

Is there anything further to do with regard to this matter today?

MR. LUPARDUS: Yes, Your Honor, just a couple of things. One, I would ask that the court, if the court would be so inclined, make a recommendation that the defendant be incarcerated ultimately at the closest facility to his home, that being Welch, West Virginia, as his security score will allow.

Secondly, I'll need to see him sometime in the next six to eight days prior to his ten-day period for appeal running to discuss with him what that means and to discuss with him in detail whether he wishes to file an appeal or waive that right. I would like to get that in writing. And, if he's placed back in Kentucky, that's going to be a whole day for me to go up there and do that.

So I would ask, if it's at all possible, that he be placed locally, at least for maybe two or three days, over at SRJ in Beckley or something to allow me the time to get up and see him to do that. I realize the marshals are kind of sometimes stuck with placing them where they have to place in these cases, but if it's at all possible, if they can at least keep him local for me for two or three days, at least, that would be beneficial.

THE COURT: Well, that's a reasonable request, Mr. Lupardus, but in view of the multiple defendants in this case and the burden on the marshals and so forth, I'm not going to

interfere with their decision.

MR. LUPARDUS: I don't know where any of the other defendants are.

THE COURT: And I hope that they'll be mindful of your situation, but, first of all, I don't know that I have any authority to order them to take such action. I can recommend it, but I think this is a burdensome case for them because of the nature of the case and the number of defendants and so forth and I'll just ask them to note your request and leave it at that.

MR. LUPARDUS: Thank you.

THE COURT: Anything else? Oh, and I will recommend that the defendant be incarcerated at the nearest suitable facility to Welch, West Virginia.

MR. LUPARDUS: Your Honor, in addition to that, he may benefit from the inmate drug program.

THE COURT: I'll recommend that as well.

MR. LUPARDUS: Thank you.

THE COURT: Anything else?

MR. BUSHONG: No, Your Honor.

THE COURT: Is that all, Mr. Lupardus?

MR. LUPARDUS: I'm sorry, Your Honor.

THE COURT: Go ahead. I'm sorry.

MR. LUPARDUS: I misspoke a bit with reference to the ultimate incarceration. My client has a cousin who works at the Beckley medium security facility and so he would rather not be

placed ultimately in the Beckley medium security because he would have to go into special holding rather than general population due to his cousin working there. So if that recommendation could be crafted so as to ask that he not be placed there.

THE COURT: Well, that's -- I'll ask the Bureau of Prisons to take that into consideration when they assign him.

MR. LUPARDUS: Thank you very much.

THE COURT: All right. The defendant is remanded and this hearing is concluded.

(Proceedings concluded at 1:58 p.m., August 25, 2008.)

CERTIFICATION:

I, Ayme A. Cochran, Official Court Reporter, certify that the foregoing is a correct transcript from the record of proceedings in the matter of United States of America, Plaintiff v. Jerry Headen, Defendant, Criminal Action No. 1:07-cr-00140-1, as reported on August 25, 2008.

s/Ayme A. Cochran, RPR, CRR          November 24, 2009

Ayme A. Cochran, RPR, CRR          DATE