IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

_____x
                                :
UNITED STATES OF AMERICA,        :        Criminal Action
                                :
              Plaintiff,         :        No.  1:07-cr-00140
                                :
v.                              :
                                :        Date:  August 27, 2007
JERRY HEADEN,                    :
                                :
              Defendant.         :
_____x


TRANSCRIPT OF PLEA HEARING HELD BEFORE
THE HONORABLE DAVID A. FABER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
IN BLUEFIELD, WEST VIRGINIA

APPEARANCES:

For the Government:        AUSA MILLER A. BUSHONG
                           U.S. Attorney's Office
                           110 Heber St., Room 261
                           Beckley, WV  25801

For the Defendant:         TIMOTHY P. LUPARDUS, ESQ.
                           Lupardus Law Office
                           P.O. Box 1680
                           Pineville, WV  24874-1680

Probation Officer:         Dave Stevens

Court Reporter:            Ayme Cochran, RPR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

PROCEEDINGS had before The Honorable David A. Faber, Judge, United States District Court, Southern District of West Virginia, in Bluefield, West Virginia, on August 27, 2007, at 2:30 p.m., as follows:

THE COURT: The case is the United States against Jerry Headen, case number 1:07-00140-1.

Will you note your appearances, please?

MR. BUSHONG: Miller Bushong or the United States, Your Honor.

MR. LUPARDUS: Timothy Lupardus appearing on behalf of Jerry Headen, who is seated next to me.

THE COURT: Please place on the record, Mr. Bushong, the purpose of the hearing.

MR. BUSHONG: Your Honor, the defendant seeks to plead guilty to a written plea agreement.

THE COURT: Mr. Headen, if it's your intention to tender a guilty plea to the court, I'll ask you to come forward with your counsel and the clerk will place you under oath.

COURTROOM DEPUTY CLERK: Raise your right hand, please.

**JERRY HEADEN, DEFENDANT, SWORN**

COURTROOM DEPUTY CLERK: You're under oath.

THE COURT: Mr. Headen, before I can accept your plea, I'm required to ask you a number of questions to ensure that it is a valid plea. If at anytime during my questions you want to confer with your attorney before answering or you want to ask me

anything or you don't understand something and you want me to explain it over again to you, tell me, and I will allow you to do so.

You also need to understand that by pleading guilty, the court may question you about the offense to which you have pleaded and, if you answer any questions under oath and fail to tell the truth, you could subject yourself to further prosecution for perjury or false swearing.

Will you state your name, please?

THE DEFENDANT:  Jerry Headen.

THE COURT:  And how old are you?

THE DEFENDANT:  32.

THE COURT:  Where do you live?

THE DEFENDANT:  Right now, McDowell.

THE COURT:  McDowell County?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have an address down there?

THE DEFENDANT:  14 Elm Street, Welch.

THE COURT:  Okay.  Do you read and write the English language?

THE DEFENDANT:  Yes, sir.

THE COURT:  How far did you go in school?

THE DEFENDANT:  I graduated, sir.

THE COURT:  From high school?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you had any formal training or schooling of any kind beyond high school?

THE DEFENDANT:  No.  I just took trade school when I was in high school.

THE COURT:  Okay.  What trade did you study?

THE DEFENDANT:  Carpentry.

THE COURT:  Okay.  Have you in the past two years been under the care of a physician or other medical practitioner for any serious illness or injury?

THE DEFENDANT:  No, sir.

THE COURT:  Have you in the past two years been under the care of a psychiatrist or psychologist for any mental or emotional disorder?

THE DEFENDANT:  No, sir.

THE COURT:  Have you in the past two years been under treatment for drug or alcohol addiction?

THE DEFENDANT:  No, sir.

THE COURT:  Have you taken any drugs, medicine or pills or drunk any alcoholic beverages in the last 24 hours?

THE DEFENDANT:  No, sir.

THE COURT:  As far as you know, are you in good health both mentally and physically?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Lupardus, do you have any reason to question the defendant's competency?

MR. LUPARDUS:  I do not, Your Honor.

THE COURT:  Do you, Mr. Bushong?

MR. BUSHONG:  No, Your Honor.

THE COURT:  I find him competent.

Is there a written plea agreement?

MR. BUSHONG:  There is, Your Honor.

THE COURT:  Please mark and file the original and summarize it for the record.

MR. BUSHONG:  Your Honor, the -- may I approach, Your Honor?

THE COURT:  Yes.

MR. BUSHONG:  The proposed plea is in letter form. It's dated July 31st, 2007.  It has one attachment, which is the information in this count -- or in the case of a two-count information.  It is addressed to Tim Lupardus, counsel for the defendant.  I'll summarize each paragraph.

Paragraph 1 is the charging agreement.  It states that the defendant agrees to waive his right to be indicted and will consent to the filing of a two-count information, which is attached as plea agreement Exhibit A.

Paragraph 2 is the resolution of charges paragraph.  It states that the defendant will plead guilty to two counts.  The first count is conspiracy to distribute a quantity of oxycodone; the second count is conspiracy to commit money laundering.

Paragraph 3 is the maximum potential penalty that the

defendant faces under the statute. Under Count 1, the drug conspiracy, the defendant faces a term of imprisonment of 20 years; a $1-million dollar fine; three years of supervised release; a $100.00 special assessment; denial of federal benefits for up to five years; and restitution.

Under Count 2, the money laundering conspiracy, the defendant faces 20 years imprisonment; a $500,000.00 fine or twice the value of the property involved in the transaction, whichever is greater; a three-year term of supervised release; a $100.00 special assessment; and restitution.

The total maximum is imprisonment for a period of 40 years; $1.5 million dollars fine, or twice the gross pecuniary gain or loss resulting from defendant's conduct, whichever is greater, or twice the value of the property involved in the transaction, whichever is greater; three-year term of supervised release; a $200.00 special assessment; restitution; and a denial of federal benefits for up to five years.

Paragraph 4 is the special assessment paragraph that states the defendant will pay the special assessment of $200.00 today.

Paragraph 5 is a cooperation paragraph that states the defendant will be cooperative with the U. S. Attorney's Office and other law enforcement agencies pursuant to this agreement.

Paragraph 6 is a forfeiture provision that states that the defendant agrees that the conspiracy to distribute oxycodone generated proceeds; that the defendant is liable for the total

gross proceeds of the conspiracy; and the defendant will forfeit any property in his possession or under his control which constitutes proceeds of or which facilitated the conspiracy offenses and the defendant will assist in effectuating this by cooperating and filling out financial affidavits to effectuate the forfeiture. The defendant also agrees to waive any defenses to the forfeiture action based on the Excessive Fines Clause under the Constitution.

Paragraph 7 is the standard use immunity paragraph. It states that the United States -- that the defendant has use immunity pursuant to this agreement.

Paragraph 8 is a limitation on that immunity which allows the United States to use information which it has learned independent from the defendant and can charge him with additional crimes in correlating the guidelines.

Paragraph 9 is the monetary payment. The defendant agrees not to object to all monetary penalties being paid immediately. The defendant will also agree not to object to a schedule of payments, if imposed by the Court.

Paragraph 10 is the Appeal of Sentence paragraph. The parties agree not to appeal a sentence based on reasonableness if it is within the Guideline range and the parties agree not to appeal a fine unless it's outside the Guideline range.

Paragraph 11 is the final disposition paragraph. It states that sentencing is within the sole discretion of the court. The

United States reserves the right to address the court regarding the facts of the case; comment on the factors in 13 -- or 18 U. S. C. Section 3553(a); respond to any questions raised by the Court; comment on the presentence report; respond to any statement made to the court by the defendant regarding the offense, cooperation and acceptance of responsibility.

Paragraph 12 is the Voiding of the Agreement paragraph. If either party violates the terms of the agreement, the other party has the right to void the agreement. If the court refuses to accept the agreement, it shall be void.

13 is the Entirety of the Agreement paragraph. This is the entire agreement between the parties. There are no side agreements or understandings outside the four corners of the document.

Your Honor, each of the eight pages is signed and dated by the defendant and his counsel. The last page is signed by myself.

THE COURT: Mr. Headen, you heard the Assistant U. S. Attorney's summary of the plea agreement. Does what he said accurately reflect what you agreed with the government in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Have you read the plea agreement carefully for yourself and gone over it with Mr. Lupardus, your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel like you understand everything in it?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Lupardus, what, in your professional opinion, are the advantages, if any, that accrue to the defendant under the plea agreement as opposed to standing trial on the underlying charge?

MR. LUPARDUS: Your Honor, the plea agreement in some respects limits his exposure and also gains him an opportunity to earn certain sentencing benefits.

THE COURT: Mr. Bushong, what advantages, if any, accrue to the government under this plea agreement?

MR. BUSHONG: It avoids the time and expense of a trial, Your Honor, and secures the defendant's cooperation.

THE COURT: Mr. Headen, the maximum statutory penalties to which you will be exposed pursuant to your pleas of guilty are as follows:

For Count 1, a term of imprisonment for a period of 20 years; a maximum fine of up to $1 million dollars, or twice the gross pecuniary gain or loss resulting from your conduct, whichever is greater; a term of supervised release of three years; a mandatory special assessment of $100.00; a possible order of community restitution not to exceed the amount of the fine; and a possible denial of certain federal benefits for a period of five years.

As to Count 2, the maximum term of imprisonment is 20 years; the fine is $500,000.00, or twice the value of the property involved in the transaction, whichever is greater; a term of supervised release of three years; and a mandatory special assessment of $100.00.

The total maximum term would be imprisonment for 40 years; a fine of $1,500,000.00, or twice the gross pecuniary gain or loss resulting from your conduct, whichever is greater, and/or twice the value of the property involved in the transaction, whichever is greater; a term of supervised release of three years; supervised release terms have to be concurrent; the mandatory special assessment; and a total amount of $200.00; a possible order of community restitution not to exceed the amount of the fine; and a possible order denying federal benefits for a period of up to five years.

Do you understand the penalties that apply here?

THE DEFENDANT: Yes, sir.

THE COURT: Supervised release is a period of time during which you would be subject to the control of the Probation Office of this court after you complete any term of imprisonment included in the court's initial sentence. Supervised release would be subject to conditions and, if you violate any of those conditions, you could receive additional time in prison over and above the original term of imprisonment included in the court's sentence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Under the Sentencing Reform Act of 1984, the U. S. Sentencing Commission has issued guidelines for courts to follow in determining the sentences in criminal cases. The guidelines are no longer mandatory, but the court is required to consult them and impose a sentence that is reasonable within the statutory scheme, giving due consideration to the guidelines. Have you and your attorney talked about how the guidelines might apply to your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand from those discussions that the court will not be able to determine the guideline sentence range for your case until after a presentence report has been completed by the Probation Office and both you and the United States have had an opportunity to review that report and to challenge anything in it you believe to be inaccurate or incomplete?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that after it has been determined what guideline does apply to your case, the court has the authority in some circumstances to depart from the guidelines and impose a sentence that is either more severe or less severe than the sentence called for by the guidelines in your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the court now has

the authority under some circumstances to impose a variant sentence, which is a sentence outside the guidelines, but not technically a departure? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that under some circumstances, you or the government may have the right to appeal the sentence I impose and that the standard provision of the plea agreement limiting the right to appeal a fine limits, to a certain extent, your appellate rights?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that parole has been abolished in the federal system and, if you are sentenced to any term of imprisonment, you will not be released early on parole?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that? Do you also understand that the court's sentence on Count 1 may include an order of community restitution; that is, an order requiring you to pay a sum of money into a fund earmarked for certain public purposes and that the amount of the community restitution order may not exceed the amount of the fine? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if the sentence imposed upon you is more severe than you expected, you will still be bound by your plea of guilty and will have no right to withdraw your plea for that reason?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the absolute right to plead not guilty to the charges against you and to persist in your plea of not guilty throughout all the proceedings against you?

THE DEFENDANT: Yes, sir.

THE COURT: You have to answer out loud for the record.

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the matter of sentencing remains entirely within the discretion of the court depending on what the presentence report tells me about you?

THE DEFENDANT: Yes, sir.

THE COURT: Knowing all of the things of which I have advised you, do you wish me to accept your plea of guilty to Counts 1 and 2 of the indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Now the indictment in this case, Mr. Headen, is -- I mean there is no indictment. It is an information and it's -- an information is a charging document drawn up by the United States Attorney, as opposed to an indictment, which is a charge that's been voted on and passed on by a grand jury.

The two charges in the information, one of them charges you with conspiring to knowingly and intentionally distribute quantities of oxycodone in violation of 21 United States Code

Section 846 and a conspiracy to conduct or attempt to conduct financial transactions involving the proceeds of an unlawful activity in violation of Title 18 United States Code Section 956(h). They are both felonies and you can't be prosecuted for a felony by way of an information unless you waive your right to an indictment.

Have you been furnished with a copy of the information in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Have you read it and gone over it carefully with Mr. Lupardus?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want the clerk to read the information in open court or will you waive the reading?

THE DEFENDANT: No, sir, I will waive it.

THE COURT: Are you the same person named as Jerry Headen, the defendant in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the two charges against you?

THE DEFENDANT: Yes, sir.

THE COURT: You have a constitutional right to be charged by an indictment of a grand jury for these charges, but you can waive that right and consent to being charged by information of the United States Attorney. Instead of an

indictment, these two felony charges against you have been brought by the U. S. Attorney by the filing of an information.

Unless you waive indictment, you may not be charged with a felony unless the grand jury finds by return of an indictment that there is probable cause to believe that a crime has been committed and that you committed it.

If you do not waive indictment, the government may present the case to the grand jury and ask it to indict you. A grand jury is composed of at least 16 and not more than 23 persons, and at least 12 grand jurors must find that there is probable cause to believe you committed the crime with which you are charged before you could be indicted.

If this case were presented to a grand jury, the grand jury might indict you and it might not. If you waive indictment by the grand jury, the case will proceed against you on the U. S. Attorney's information just as though you had been indicted.

Have you discussed waiving your right to an indictment --

THE DEFENDANT: Yes, sir.

THE COURT: -- with your attorney, Mr. Lupardus?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand your right to an indictment by a grand jury?

THE DEFENDANT: Yes, sir.

THE COURT: Have any threats or promises been made to induce you to waive?

THE DEFENDANT: No, sir.

THE COURT: Do you wish to waive your right to an indictment by a grand jury on each of these two charges in this information?

THE DEFENDANT: Yes, sir.

THE COURT: The clerk will now hand you a written waiver of indictment form and if it's still your desire to waive indictment, read it carefully and sign it at the place indicated.

The written waiver of indictment form has been signed by the defendant in open court and witnessed by his attorney and the court approves it and signs it and it will be filed and made a part of the record in this case.

Mr. Headen, the court finds that you have knowingly, intelligently and voluntarily waived your right to an indictment in this case with a full understanding and awareness of the rights you give up when you execute such a waiver.

Your waiver is accepted, ordered filed, and this case will now proceed against you on the basis of the United States Attorney's information just as though that information were an indictment returned by a grand jury in this district.

Has counsel explained to you that the offenses to which you are pleading are felonies and, if your pleas are accepted, you will be adjudged guilty of such offenses and such adjudication may deprive you of valuable civil rights, such as the right to vote; the right to hold public office; the right to serve on a

jury; and the right to posses a firearm?

THE DEFENDANT: Yes, sir.

THE COURT: At this point, I will ask you what your plea is to the charge contained in Count 1 of the indictment, which charges with you conspiracy to distribute oxycodone?

THE DEFENDANT: Guilty.

THE COURT: And I'll ask you what your plea is to the charge in Count 2, which charges you with a money laundering conspiracy?

THE DEFENDANT: Guilty.

THE COURT: I'm going to explain to you now what the government would have to prove against you to convict you of these two charges if you went to trial.

Count 1 of the two-count indictment charges you with a violation of Title 21 United States Code Section 846, conspiracy to distribute a quantity of oxycodone. That statute reads in pertinent part:

"Any person who conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the conspiracy."

The offense in the title that the indictment alleges you conspired to violate is contained in Title 21 United States Code Section 841(a)(1), which provides in pertinent part as follows:

"It shall be unlawful for any person knowingly or

intentionally to distribute a controlled substance."

In order to establish the offense made illegal by 21 U. S. C. 846, the United States would have to prove each of the following essential elements by competent evidence beyond a reasonable doubt:

First, that there was an agreement between you and at least one other person to commit the crime described in 21 U. S. C. 841(a)(1); and, second, that you knowingly agreed to join the conspiracy.

An act is done "knowingly" if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

A "conspiracy" is a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act. That's Count 1.

Count 2 of the two-count information charges you with violating 18 United States Code Section 1956(h) by engaging in a money laundering conspiracy. The statute describing this offense provides in pertinent part as follows:

"Any person who conspires to commit any offense defined in this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the conspiracy."

The offense in the section that the indictment alleges you conspired to violate is contained in 18 U. S. C. Section

1956(a)(1)(B)(i), which provides in pertinent part as follows:

"Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of illegal activity or unlawful activity conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity shall be sentenced to a fine of not more than $500,000.00, or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than 20 years, or both.

In order to establish the offense made illegal by Section 1956(h), the United States would have to prove each of the following essential elements by competent evidence beyond a reasonable doubt:

First, that there was an agreement between you and at least one other person to commit the crime described in Section 1956(h) and that you knowingly agreed to join the conspiracy.

An act, as I have said, is done "knowingly" if done voluntarily and intentionally and not because of mistake or accident or other innocent reason and a "conspiracy" is the combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.

Do you understand all of this?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand from this what the government would have to prove against you in order to convict you on each of these charges if you went to trial?

THE DEFENDANT: Yes, sir.

THE COURT: In light of all this, do you consider yourself guilty of these two charges?

THE DEFENDANT: Yes, sir.

THE COURT: Please place on the record the factual basis of the plea.

MR. BUSHONG: Your Honor, between January of 2005 and July 24th of 2007, this defendant and others conspired to distribute quantities of oxycodone in Havaco, Welch, McDowell County, West Virginia; Bluefield, Mercer County, West Virginia; and elsewhere.

Your Honor, the United States applied for and received permission to wire tap this defendant's brother's cell phone. Permission was granted to do that in May of 2007 and continued through July of 2007. Substantial evidence was collected during this time.

There were a number of recorded phone calls between members of the conspiracy that made clear that the oxycodone in question was coming from Detroit into the Southern District of West Virginia and was being distributed by this defendant, his brother

and others.

On July 6th of 2007, the defendant's brother, Terry Headen, was involved in a high-speed chase which resulted in his arrest and the seizure of hundreds of oxycodone tablets. Shortly following that arrest, this defendant used his brother's cell phone to call their source of supply, John Gravely, for two purposes. One, to request more oxycodone and, two, state that the conspiracy would make up a loss. The prior oxycodone that had been fronted to that supplier was lost in the arrest and seizure and the -- this defendant promised that that loss would be made up.

In July of 2007, July 24th, 2007, law enforcement executed seven simultaneous search warrants in Southern West Virginia, including this defendant's home. A number of incriminating items were found that relate to the drug and money laundering conspiracy.

If this matter were to go to trial, the United States would call as witnesses Detective Ted Jones; numerous supporting officers and agents; the chemist who testified -- or the chemist who tested the oxycodone involved in this case that was seized; numerous co-conspirators; and co-defendants.

As exhibits, the United States would introduce the recorded telephone calls from the wire tap, seized oxycodone, seized cash and seized financial documents.

The United States would ask the court to take judicial

notice that oxycodone is a Schedule II controlled substance and that Havaco, Welch and Bluefield are all within the Southern District of West Virginia.

With respect to Count 2, the money laundering conspiracy, Your Honor, between January of 2005 and July 24th, 2007, the defendant and others conspired to launder drug money. The defendant and others participated in a specified unlawful activity and that was for the conspiracy to distribute oxycodone. That SUA generated proceeds. The defendant and others invested those illegal proceeds in assets such as real estate and in personal property, including vehicles.

For example, in May of 2007, this defendant and his brother purchased an $82,000.00 Cadillac Escalade and placed that vehicle in nominee names. The defendants were the true owners of the vehicle and made payments on the vehicle.

As witnesses, the United States would call Special Agent Steve Dempsey of the IRS; co-conspirators; co-defendants; employees of the DMV, mortgage institutions and banking institutions.

As exhibits, the United States would introduce financial documents, deeds, loan application and title.

THE COURT: Mr. Headen, you heard the Assistant U. S. Attorney's summary of the factual background for each of the two charges against you. Is what he said substantially correct?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything he said with regard to either charge that you feel needs to be changed in order to make it accurate?

THE DEFENDANT: No, sir.

THE COURT: Did you then do the acts to which you have pled guilty as set out in Counts 1 and 2 of the information? Did you do the things that are charged in the information?

THE DEFENDANT: Yes, sir.

THE COURT: Are you pleading guilty because you are, in fact, guilty of each of those two counts?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you do not plead guilty, you are entitled to a speedy and public trial before me and a jury and your guilty plea completely waives your right to a trial?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if a trial were held, the government would have to come forward and confront you with each witness upon whose testimony the government relies and, when the government presented those witnesses, your attorney would have the opportunity to question each of them and test the truth of what was being said against you; that is to cross examine each of the government's witnesses under oath?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by pleading guilty,

you give up your right to both confront and cross examine your accusers?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if a trial were held, you would be presumed innocent until such time, if ever, the government overcame that presumption by the presentation of competent evidence that would first have to satisfy the court and then a jury of your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by pleading guilty you relieve the government of the burden of proving you guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you chose to go to trial, you would have the absolute right to remain silent; that is, not take the witness stand; not call any witnesses or produce any evidence whatsoever; and I would instruct the jury that they could not convict you by reason of your silence, but only upon affirmative proof beyond a reasonable doubt offered by the government?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by pleading guilty you give up this right to silence?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if you choose to go to trial, you would be entitled to the service of the U. S. Marshal

to bring witnesses to court to testify on your behalf under subpoena, if that were your desire?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if you chose to go to trial, you would have at trial the right to counsel to represent you and assist you at all stages of the proceeding and, in the event you could not afford to hire a lawyer, that right extends to your right to court-appointed counsel at trial?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that Mr. Lupardus, your counsel, will continue to represent you throughout the sentencing process?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if you are not satisfied with the type of sentence I impose upon you at the time of sentencing, that will not give you any basis to withdraw your plea of guilty and claim a right to stand trial?

THE DEFENDANT: Yes, sir.

THE COURT: Except for the specific terms of your plea agreement, has anyone promised you anything or offered any inducements to you to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you, exerted any

force upon you or done anything to get you to plead guilty against your will?

THE DEFENDANT: No, sir.

THE COURT: Has anyone made any promises to you?

THE DEFENDANT: No, sir.

THE COURT: Has anyone made any predictions to you that the court will handle your case more leniently if you plead guilty than if you stood trial?

THE DEFENDANT: No, sir.

THE COURT: Are you, in fact, acting voluntarily and of your own free will when you tender this plea of guilty to the court?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Lupardus, has the defendant been competent and able to assist you in all of these matters?

MR. LUPARDUS: Yes, Your Honor.

THE COURT: Are you satisfied you have had sufficient time to go over all relevant things with him?

MR. LUPARDUS: Yes.

THE COURT: Are you satisfied that if this case went to trial, there would have been no meritorious legal defense you could have offered on his behalf?

MR. LUPARDUS: Yes, Your Honor.

THE COURT: Are you satisfied that the defendant's constitutional and other rights have been fully observed in this

proceeding and in all matters leading up to this hearing?

MR. LUPARDUS:  Yes, I am, Your Honor.

THE COURT:  Do you then concur in his intention to plead guilty under the terms of the plea agreement?

MR. LUPARDUS:  I do.

THE COURT:  Mr. Headen, have you had sufficient time to consult with your attorney concerning the charges against you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you been honest with him and told him all the facts?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has he answered each of your questions to your satisfaction?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you satisfied with the quality of his services as your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you now have any second thoughts whatsoever about the wisdom of pleading guilty to these charges?

THE DEFENDANT:  No, sir.

THE COURT:  Do you feel like you understand everything I have explained to you in this hearing?

THE DEFENDANT:  Yes, sir.

THE COURT:  In light of all this, do you still wish to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Before execution of a written plea, let me ask whether counsel for the United States or the defendant desires that I make any further inquiry of Mr. Headen concerning his pleas of guilty?

MR. BUSHONG: No, Your Honor.

MR. LUPARDUS: No, Your Honor.

THE COURT: Mr. Headen, the clerk will now hand you a written guilty plea form. Please go over it with your attorney and, if it's still your wish to plead guilty, sign it in the place indicated.

MR. LUPARDUS: May I approach, Your Honor?

THE COURT: Yes.

The record will show that the written guilty plea form has been signed in open court by the defendant and witnessed by his attorney and will be filed and made a part of the record.

Mr. Headen, based upon your written plea of guilty, as well as your factual admission of guilt, I find that there is a factual, as well as a legal basis for your plea of guilty to the crime charged in Count 1 of the information which charges you with conspiracy to distribute a quantity of oxycodone in violation of Title 21 United States Code Section 846.

I find, also, that there is a factual, as well as a legal basis for your plea of guilty to the crime charged in Count 2 of the information, which charges you with a money laundering

conspiracy in violation of Title 18 United States Code Section 956(h).

Based upon the proffer of the United States concerning the facts it is prepared to prove at trial, I find that there is an independent factual basis for your plea of guilty to each count.

I further find that with regard to each count, you were acting voluntarily and of your own free will in tendering your plea of guilty and that you plead guilty with a full understanding and awareness of the constitutional and other rights which you give up when you tender pleas of guilty and that you have an awareness of what the government would have to prove against you in order to obtain a conviction as to each count if you stood trial.

I further find that you have an appreciation of the consequences of your plea and that you understand the range of penalties to which you become exposed upon conviction. Your pleas of guilty are provisionally accepted pending receipt of a presentence report and I will defer final acceptance of the plea agreement and the adjudication of guilt pending receipt of that report.

A written presentence report will be prepared by Probation to assist me in sentencing you. You will be asked to provide information for the report and you have the right to have your attorney present at that time, if you wish.

The court will give you and counsel an opportunity to review

a draft of the report prior to the sentencing hearing and you and counsel will have the opportunity to comment upon the report and to introduce testimony or other information relative to anything in it you believe to be inaccurate or incomplete.

You and your counsel will have the opportunity to speak on your behalf at the sentencing hearing and you may offer matters in mitigation or extenuation of punishment or otherwise relevant to sentencing at that time.

Unless otherwise directed by the Court, the Probation Office will not disclose any sentencing recommendation contained in the presentence report to anyone except the court.

Sentencing is set for December 3rd, 2007 at 2:00 in Bluefield. December 3, 2007, 2:00 p.m. in Bluefield.

Is there anything further to take up at this hearing, Mr. Lupardus?

MR. LUPARDUS: No, Your Honor, thank you.

THE COURT: Mr. Bushong?

MR. BUSHONG: No, Your Honor.

THE COURT: All right. The defendant is remanded to custody and this hearing is concluded.

(Proceedings concluded at 3:05 p.m., August, 27, 2007.)


CERTIFICATION:

I, Ayme A. Cochran, Official Court Reporter, certify that the foregoing is a correct transcript from the record of

proceedings in the matter of United States of America, Plaintiff v. Jerry Headen, Defendant, Criminal Action No. 1:07-cr-00140, as reported on August 27, 2007.

s/Ayme A. Cochran, RPR, CRR                    August 27, 2010

Ayme A. Cochran, RPR, CRR                              DATE